# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00484-COA

**JERRY W. PAIGE D/B/A PAIGE ELECTRIC COMPANY, LLC**                                  APPELLANT

v.

**WELLS FARGO AND COMPANY**                                  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/29/2016 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | BLEWETT W. THOMAS |
| ATTORNEY FOR APPELLEE: | MICHAEL JAMES BENTLEY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/03/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     This appeal is taken from the Harrison County Circuit Court. Paige Electric LLC (Paige Electric) sought recovery of a check, in the amount of $83,972.08, from Wells Fargo and Co. (Wells Fargo). Finding no error in the circuit court's dismissal of Paige Electric's case, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Paige Electric leased storage space to Bret Gibson (Gibson), an out-of-state contractor working on the Mississippi Gulf Coast following Hurricane Katrina. Gibson was indebted to Paige Electric for more than $80,000 for the storage space. On June 14, 2006, Gibson

represented to Paige Electric that he received an insurance check as payment from Jim Wylie (Wylie) for construction work performed on Wylie's Louisiana residence.

¶3.     Gibson tendered the insurance check to Paige Electric as payment and full satisfaction of Gibson's debts.  The check was issued by Fidelity and Deposit Company of Maryland (Fidelity).  The check was payable to Jim A. Wylie and the company holding the mortgage on Wylie's home, HomeEq Service Corporation (HomeEq), in the amount of $83,972.08. This check was for the payment of damage done by Hurricane Katrina.  Between 2006 and 2008, HomeEq was owned by Wells Fargo.

¶4.     Paige Electric contacted Wylie to verify the check had been properly endorsed by all payees, and was negotiable.  Wylie confirmed the genuineness of the endorsements, and that he rightfully possessed the check.  As a result of Wylie's and Gibson's representations, Paige Electric accepted the check in satisfaction of Gibson's outstanding debts and deposited the check into its BancorpSouth checking account.  Paige Electric also paid Gibson the difference between his indebtedness and the amount of the check in cash.

¶5.     The check was deposited on June 14, 2006, and final payment was made by Wells Fargo on June 15, 2006.  After making the final payment, Wells Fargo did not dispute the payment of the check or raise any claims of fraudulent endorsement until nearly five months after it was deposited.  From June 14, 2006, to November 27, 2006, BancorpSouth placed no restrictions or holds regarding the funds deposited.

¶6.     On November 1, 2006, HomeEq submitted an affidavit alleging that the check Paige Electric deposited was wrongfully endorsed.  Wells Fargo received that affidavit on

2

November 20, 2006. Wells Fargo notified BancorpSouth that an endorsement was forged, and the check was not enforceable by Paige Electric. On November 27, 2006, Paige Electric was notified by BancorpSouth that a hold was being placed on Paige Electric's checking account, due to Wells Fargo's wrongful-endorsement claim. On December 5, 2006, BancorpSouth rejected Wells Fargo's forged-endorsement claims and released the hold on Paige Electric's account.

¶7. For more than a year, Paige Electric received no further communication from Wells Fargo, HomeEq, or BancorpSouth, regarding the validity of the endorsements or the payment of the check. On December 31, 2007, BancorpSouth contacted Paige Electric and advised that another hold was placed on their account, for the entire amount of the check. On March 3, 2008, BancorpSouth deducted the entire amount of the check from Paige Electric's account.

¶8. Around May 2010, Paige Electric filed suit to recover the check's value from Wylie, Gibson, HomeEq, BancorpSouth, and Wells Fargo. Wells Fargo moved to dismiss the claims against it, asserting that the claim was barred by the Mississippi Uniform Commercial Code (UCC), since Paige Electric did not have an account with it. On May 15, 2014, four years after Wells Fargo's motion to dismiss was filed, the clerk of the court sua sponte moved to dismiss Paige Electric's suit for want of prosecution.

¶9. In response to the clerk's motion, Paige Electric sought leave to amend and "correct" its complaint. Wells Fargo opposed the amendment as futile and re-urged its motion to dismiss Paige's claims. The circuit court gave Paige Electric leave to amend its complaint.

3

¶10. Paige Electric's amended complaint dropped all claims against Wylie and Gibson and asserted that HomeEq, BancorpSouth, and Wells Fargo were liable for the full amount of the check. Paige Electric's first amended complaint asserted that Wells Fargo was liable to it under the UCC for the face value of the forged check under the following theories: (1) Wells Fargo did not provide timely notice of the forgery; (2) Wells Fargo was estopped from denying the validity of the endorsement of the forged check; (3) Wells Fargo unreasonably delayed its request that BancorpSouth return the funds transferred under the forged check; (4) Wells Fargo was careless in handling HomeEq's claim, which resulted in a failure to observe reasonable commercial standards of fair dealing; (5) Wells Fargo refused to assert the applicable defenses under Mississippi Code Annotated Section 75-4-406 (Rev. 2016), that would have required HomeEq to sustain the loss.

¶11. Wells Fargo moved to dismiss Paige Electric's first amended complaint, contending that Paige Electric had failed to state a claim for relief against Wells Fargo and, further, that the UCC precluded Paige Electric from asserting any cognizable claim against Wells Fargo. Wells Fargo reiterated that Paige Electric was not a customer of Wells Fargo and the fact that Paige Electric acknowledged the forgery amounted to a breach of its warranties and precluded it from recovering any amounts from the check.

¶12. On March 12, 2015, a hearing was held on Wells Fargo's motion to dismiss. On April 16, 2015, the circuit court entered an order dismissing Paige Electric's complaint under Rule 12(b)(6) of Mississippi Rules of Civil Procedure. It is from that order that Paige Electric

now appeals.[1]  Finding no error, we affirm.

## STANDARD OF REVIEW

¶13.    A motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Lagniappe Logistics Inc. v. Buras*, 199 So. 3d 675, 676 (¶5) (Miss. 2016).  Rule 12(b)(6) motions should not be granted unless "it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Id.* (quotation marks omitted).  When reviewing a Rule 12(b)(6) motion on appeal, we conduct a de novo review and must accept the allegations contained in the complaint as true.  *Id.*

## DISCUSSION

*Whether the circuit court erred in dismissing Paige Electric's claims against Wells Fargo.*

¶14.    Paige Electric's amended complaint alleged that Wells Fargo was directly or indirectly involved in acts of conversion, misappropriation, and coercion regarding the wrongful appropriation and removal of the check's proceeds from Paige Electric's bank account. Paige Electric further asserts that Wells Fargo's liability regarding the manner of recovery of the check's proceeds from its bank account was supported by Mississippi Code Annotated Sections 75-3-417 and/or 75-3-418 (Rev. 2016).

¶15.    Paige Electric argues that an unauthorized debit from its checking account was a wrongful recovery and tantamount to conversion.  Paige Electric also argues sections 75-3-417 and 75-3-418 support its claims.  We do not agree.  Section 75-3-417 discusses the

---

[1] We note that although Paige Electric had also appealed the dismissal of its claims against HomeEq and BancorpSouth, its claims against those entities were resolved on appeal.

5

liability of parties and presentment warranties. This section of Mississippi's UCC does not address the wrongful recovery of funds obtained by a fraudulent endorsement. Instead, the section addresses the applicable warranties of a payee and its responsibilities if those warranties are breached. Section 75-3-417 does discuss Paige Electric's liability for a presentment-warranty breach due to Gibson's and Wylie's fraudulent endorsement. Therefore, Paige Electric warranted to BankcorpSouth and Wells Fargo that all signatures on the instrument were authentic and authorized, *see* Miss. Code Ann. § 75-3-417 (a)(2), and therefore those entities could recover from Paige Electric. We find nothing in this code section that supports Paige Electric's claims of wrongful recovery.

¶16. However, it should be noted that Wells Fargo waited more than thirty days after it had reason to know of the breach of warranty before noticing its claim. Pursuant to Mississippi Code Annotated Section 75-3-416(c) (Rev. 2016), check warranties are disclaimed if notice of the claim is not submitted within thirty days after the claimant has reason to know of the breach and the identity of the warrantor. A warrantor's liability is discharged to the extent of the loss caused by the delay in giving notice. Paige Electric's warranty is discharged to the extent the loss was caused by the delay. Nevertheless, Paige Electric has not identified any such issues.

¶17. Paige Electric also asserts that Section 75-3-418 supports its wrongful-recovery claims. We disagree. Section 75-3-418 addresses payment or acceptance by mistake, and the right of a drawee to recover funds that were mistakenly paid. This section is inapplicable, since the payment to Paige Electric was made due to fraud and not mistake. As such, this

section does not apply.

¶18.    Paige Electric maintains that its claim of conversion is a cognizable claim for which relief can be granted.  Paige Electric cites Mississippi Code Annotated Sections 75-1-103(b) and 75-3-420 (Rev. 2016) as support for its claim.  Section 75-1-103 addresses the  liberal construction and application of the UCC.  Coercion is only mentioned once in this section and it states, "Unless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions." Miss. Code Ann. Section 75-1-103 (b) (Rev. 2016).  Moreover, Paige Electric cites to Miss. Code Ann. Section 75-3-420 to support its claim of conversion, but we do not find this argument persuasive.  Paige Electric cites to Section 75-3-420, but it fails to adequately explain how this section justifies its argument of conversion.  The trial court found that Paige Electric failed to state a claim for which relief could be granted.  Finding no error, we affirm.

¶19.    **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR AND GREENLEE, JJ., CONCUR.  WILSON, J., NOT PARTICIPATING.**